UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEMITRIOS GOROS,

                                        Plaintiff,

      vs.

KENNETH S. PEARLMAN; JAMES A.                    9:03-CV-1303
MANCE; D. KELEFANT; RIDDRICK;                    (S.J. McAvoy)
SGT. ALLEN; C. KANTE; C.O. DURANT;
C.O. MEACHAM; HENRICH; BROWN; and
M.D. GREGOIRE J. PETER,

                                        Defendants.

_____

APPEARANCES                           OF COUNSEL

DEMITRIOS GOROS
Plaintiff pro se

ELIOT SPITZER                        SENTA B. SIUDA
Attorney General of the                Asst. Attorney General
State of New York
Attorney for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

      In this amended civil rights complaint, plaintiff alleges that defendants denied

him due process by failing to properly handle his inmate grievances. (Dkt. No. 7).

Plaintiff also appears to claim that he has been denied proper medical care, and that

the defendants are retaliating against him because he filed a previous lawsuit in federal court.

Plaintiff seeks substantial monetary relief.

Presently before the court is defendants' motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 41).  Plaintiff has responded in opposition to the motion. (Dkt. No. 42).  For the following reasons, this court will recommend granting defendants' motion in part and denying it in part.

## DISCUSSION

### 1.   <u>Motion for Judgment on the Pleadings</u>

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* FED. R. CIV. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion under Rule 12(b)(6). *Id*.

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate*, 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, **great liberality** is afforded to *pro se* litigants. *Platsky v. Central Intelligence*

2

*Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).  When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).

2. **Facts**

In a lengthy and somewhat confusing amended complaint, plaintiff outlines many grievances that he has written, beginning on May 15, 2003 when he was incarcerated at Mohawk Correctional Facility.  Plaintiff alleges that the May 15, 2003 grievance, dealing with a request to take water to the outside yard, was denied by defendant Pearlman.[1]  Plaintiff states that this denial was "incorrect." Amended Complaint (AC) at p.5, ¶ 2.  Plaintiff states that on June 24, 2003, he appealed the denial of the grievance to the Central Office Review Committee (CORC), but that the CORC advised plaintiff to file a Freedom of Information Request. AC at p.6, ¶ 3.

Plaintiff filed another grievance on June 21, 2003 against defendant Corrections Officer Meacham because this officer was giving plaintiff "aggravation" with respect to an "over bed" table where plaintiff kept tissues and water. AC at p.6, ¶ 4.  Plaintiff alleges that the June 21 grievance was denied on July 10, 2003 by defendant Pearlman, but it appears that plaintiff alleges that defendant Pearlman denied the

---

[1] Part of what makes this amended complaint confusing is that plaintiff initially listed all the defendants, designating them by letters A-K. Amended Complaint at pp.1-3.  Plaintiff then writes his statement of facts and causes of action, but rather than writing the defendant's name in a particular sentence, he refers to each defendant by his designated letter from the beginning of the amended complaint.  Thus, it is very difficult to read the complaint because the reader must keep referring to the beginning of the document in order to determine about whom plaintiff is speaking in the text of the amended complaint.  Plaintiff refers to a defendant as: "defendant # A.

grievance improperly.  Plaintiff states that one person mentioned in the denial was referred to as "anonymous" and plaintiff stated that although an "investigator" was mentioned, plaintiff never saw an investigator. AC at p.6, ¶ 6.

On June 29, 2003, plaintiff filed a grievance against defendants Durante and Meacham because they verbally abused and threatened plaintiff with keeplock for three months over the summer. AC at pp.6-7, ¶ 8.  Plaintiff claims that later in the evening on June 29, 2003, defendant Durante and another officer returned to plaintiff's room and verbally abused him.  Plaintiff also claims that defendant Durante pushed plaintiff on to the floor and spilled water on his papers. *Id.* at p.7, ¶ 9.  Plaintiff states that he was frightened and pushed the emergency call button, but the nurse who responded told plaintiff that she could not do anything about it. *Id.* ¶ 10.

Plaintiff claims that on June 29, 2003, defendant Durante wrote a misbehavior report against plaintiff, using defendant Meacham as a witness. *Id.* ¶ 11.  Plaintiff states that he was given keeplock for three days as a result. *Id.*  Plaintiff states that on July 23, 2003, he received the denial of another grievance by defendant Pearlman, (a grievance number that had not been mentioned previously in the amended complaint). AC ¶ 12.  Plaintiff claimed that the grievance denial stated that the grievance had been investigated by an "anonymous" security supervisor, and that there were a few discrepancies between the "written and spoken grievance." *Id.*  Plaintiff then claims that he knew the investigator was defendant C. Kante because the nurse had pushed plaintiff in his wheelchair into defendant Kante's office. *Id.* ¶ 13.  Plaintiff stated that

4

he told defendant Kante about an accident that happened on June 29, 2003,[2] and that he would forgive defendants Durante and Meacham if they would stop bothering plaintiff. *Id.* at 7-8, ¶ 13.

Plaintiff claims that defendant Kante wrote a statement against plaintiff, containing lies, and signed it as an anonymous investigator. *Id.* at p.8, ¶ 14. Plaintiff states that defendant Kante never mentioned plaintiff's witness, Nurse Miller and did not mention plaintiff's offer to forgive defendant's Durante and Meacham if they would stop bothering him. *Id.* Plaintiff states that he appealed the denial of this grievance to the CORC, and plaintiff seems to state that the CORC did not deny the grievance.

Plaintiff states that on July 30, 2003, plaintiff had a hearing on yet another grievance whose number he had not mentioned previously in the amended complaint. Plaintiff takes issue with the fact that his grievance had been "synopsized [sic]" by defendant Kelefant. *Id.* ¶ 16. Plaintiff states that on July 30, 2003, defendants Riddrick and Allen signed an "incorrect response." *Id.* ¶ 17. Plaintiff states that he told defendants Riddrick and Allen that they prepared an "incorrect denial" on a "fake grievance form." *Id.* Plaintiff claims that defendant Riddick had plaintiff removed from the room. *Id.* pp.8-9, ¶ 17.

Plaintiff alleges that on August 6, 2003, he wrote a memorandum to defendant Pearlman, enclosing copies of what plaintiff referred to as the original and "faked"

---

[2] The June 29, 2003 incident was when defendants Durante and Meacham allegedly harassed plaintiff and then Durante and another officer returned to plaintiff's room to harass him again and ultimately Durante allegedly pushed plaintiff to the floor and spilled water on his papers.

grievance, prepared by defendant Kelefant. *Id.* p.9, ¶ 18.  Plaintiff states that on August 11, 2003, he received a response from defendant Mance, Deputy Superintendent of Programs, stating that it was the Inmate Grievance Resolution Committee (IGRC) Supervisor's job to "prepare" the grievance by filing the original, together with a "synopsis" of the original.

Plaintiff claims that on September 1, 2003, defendant Riddick asked plaintiff to sign some papers, but left the room when plaintiff asked that he be able to read the papers first. *Id.* ¶ 20.  On September 10, 2003, plaintiff states that he was transferred to Five Points Correctional Facility. *Id.* ¶ 21.  Plaintiff also cryptically states in the same paragraph that he was deprived of "Life 'Liberty' and Property for the rest of his life 'without due process of law.'" *Id.*

Plaintiff's first "count" states that he is suing for "retaliatory treatment for filing § 1983 grievances." *Id.* p.9.  Plaintiff then states that by denying plaintiff's grievance, defendant Pearlman was deliberately indifferent to plaintiff's health and safety. *Id.* pp.9-10, ¶ 23.  Plaintiff claims that the denial of the grievance gave the "go ahead" for defendants Durante and Meacham to "continue the abuse and torture." *Id.* pp.9-10, ¶ 23.

Plaintiff alleges that defendant Kante was deliberately indifferent to plaintiff's "complaint" because this defendant did not identify himself as the investigator of one of plaintiff's grievances, and then lied in the report.  Plaintiff also states that defendant Kante should have mentioned as part of the investigation that plaintiff was willing to forgive defendants Durante and Meacham if they would agree to stop bothering him.

6

*Id.* p.10, ¶ 24.

Plaintiff claims that defendants Durante and Meacham were deliberately indifferent to plaintiff's health because they abused and "tortured" and "tyranniz[ed]" plaintiff for using the "over bed table". *Id.* ¶ 25.  Plaintiff claims that defendant Kelefant was deliberately indifferent to "plaintiff's grievance" because he created a synopsis of plaintiff's original grievance, but did not sign the document. *Id.* ¶ 26. Plaintiff alleges that defendants Allen and Kante were deliberately indifferent to plaintiff's grievance because they supported the "fake" grievance and signed an incorrect denial in front of plaintiff. *Id.* pp.10-11, ¶ 27.  Plaintiff claims that defendant Mance was also deliberately indifferent to plaintiff's grievance when he told plaintiff in a memorandum that it was the IGRC Supervisor's job to create a synopsis of the grievance. *Id.* ¶ 28.

Plaintiff second "count" is entitled "Fourteenth Amendment Due Process Clause." *Id.* p.11.  Plaintiff appears to only allege claims against the Five Point defendants in this second "count."  Plaintiff states that since he was incarcerated at Five Points on September 10, 2003, he was kept in a hospital room and keeplocked 24 hours per day with no one listening or responding to his requests. *Id.* ¶ 30.  Plaintiff alleges that on September 11, 2003, defendant Brown wanted plaintiff to sign papers, but would not let plaintiff read the papers first. *Id.* ¶ 31.  Plaintiff alleges that defendant Dr. Peter also came to plaintiff's room on the same day with papers for him to sign, but plaintiff refused to sign the documents, and the doctor left the room without examining plaintiff. *Id.* ¶ 32.

Plaintiff states that he filed a grievance on September 13, 2003, requesting to be allowed outside recreation, but received no response from the IGRC. *Id.* p.12, ¶ 33. On September 27, 2003, plaintiff wrote another grievance inquiring why he was keeplocked 24 hours per day without a hearing, and again, the IGRC failed to respond. *Id.* ¶ 34. Plaintiff states that on September 27, 2003, he wrote to defendant Henrich, the IGRC Clerk at Five Points, inquiring about the September 13 grievance, but received no response. *Id.* ¶ 35. On October 10, 2003, plaintiff states that he wrote to defendant Brown, inquiring about both the September 13 and the September 27 grievance, but received no response. *Id.* ¶ 36.

Plaintiff states that on October 4, 2003, he wrote to defendant Dr. Peter, asking what "category" plaintiff was and why he was keeplocked 24 hours per day, but alleges that defendant Peter did not respond to plaintiff's inquiry. *Id.* ¶ 37. Plaintiff states that on October 10, 2003, he asked Dr. Peter in writing as well as orally, if plaintiff could see an eye doctor, but Dr. Peter never responded to that request. *Id.* p.13, ¶ 43. Plaintiff alleges that defendant Dr. Peter did not like to be accompanied by other staff persons when he visited plaintiff. Plaintiff states that on December 16, 2003, he asked defendant Dr. Peter for a water pitcher and a wheelchair[3] for the shower, but that Dr. Peter ***did not answer*** his requests. *Id.* p.13, ¶ 41. However earlier in the amended complaint, plaintiff appeared to state that his "washer tub" was not working properly, and that he needed a water pitcher, ice, and a wheelchair for the shower, but that defendant Peter ***told*** plaintiff that he did not want to hear it because

---

[3] It is unclear whether plaintiff must use a wheelchair at all times.

"here is jail." *Id.* ¶ 38.

Plaintiff then states that Five Points "released" plaintiff's account on November 24, 2003. *Id.* p.12-13, ¶ 39.  Plaintiff also states that on December 1, 2003, he could go into the outside yard beginning December 1, 2003, but plaintiff had been deprived of outside yard for 78 days.  Plaintiff was also told that there would be no "outside yard" on the weekends, and that he was still being denied "recreation." *Id.* ¶ 41.

Plaintiff's "count three" is entitled "Substantive Due Process." *Id.* p.13.  He states that defendants Henrich and Brown were deliberately indifferent to plaintiff's safety because they failed to respond to his September 13 and September 27 grievances. *Id.* pp.13-14, ¶ 45.  Plaintiff alleges that defendant Dr. Peter was deliberately indifferent to plaintiff's health because plaintiff has various medical conditions, and Dr. Peter kept plaintiff keeplocked, treated him through the room's small window, allowed him to have a broken wash tub, and denied plaintiff a water pitcher with ice. *Id.* p.14, ¶ 46.  Plaintiff states that Dr. Peter had "an attitude" because plaintiff refused to sign papers on September 11, 2003. *Id.*

Plaintiff also has a section of the amended complaint entitled "Causes of Action." *Id.* p.14.  In this section plaintiff claims that plaintiff was subjected to harassment at Mohawk Correctional Facility because plaintiff filed a lawsuit in federal court: 9:03-CV-407.  Plaintiff claims that he had no problems for five months after he arrived at Mohawk, but the harassment started after his filing of the lawsuit. *Id.*

Plaintiff's second cause of action is against defendant Pearlman for denying plaintiff's grievances, thus, allowing the harassment to continue. *Id.* p.15.  Finally

9

plaintiff's third cause of action states that on October 14, 2003, plaintiff received a "statement" from Mohawk Correctional Facility, indicating that plaintiff's "category" was "patient prisoner".  This classification allegedly deprived plaintiff of due process.

**3.    Service of Process**

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m).  The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.*  It is true that a pro se, in forma pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

There is support for the proposition that, so long as a pro se plaintiff has properly identified the defendant, the Marshal's failure to effect service automatically constitutes good cause for failure to serve within the appropriate time period. *See Ruddock v. Reno*, 104 Fed. Appx. 204, 206-207 (2d Cir. 2004)(citations omitted). Although *Ruddock* was an "unpublished decision," the other Circuit cases cited by the Second Circuit in *Ruddock* show support for this assertion.  *Ruddock*, however, was a case against *federal* defendants, and the court reasoned that it would not be overly burdensome for the Marshal to obtain a current business address from the Department of Justice, since both work for the same employer. *Id.* at 207 (quoting *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).  The court in *Sellers* commented that if the Marshal could not obtain the current business address from the Department of Justice, a pro se inmate could not reasonably be expected to obtain an address from the Bureau

of Prisons *Id.*

This case presents a different problem. The defendants in this action are New York State Corrections officials, not federal officials, and often additional cooperation from State officials is necessary to determine current business addresses for defendants. Additionally, defendants may retire or stop working for DOCS before plaintiff files his federal lawsuit. This makes finding current addresses even more difficult. Security issues also arise regarding home addresses of those defendants who retire from DOCS.

In this case, defendants first argue that this action should be dismissed as against defendants Henrich and C. Kante because they have not been served within the appropriate time. Defendants argue that service on defendant Henrich was attempted twice, without success. The court has reviewed the docket sheet in this case and the documents associated with the attempted service on both defendants Henrich and Kante. (Dkt. Nos. 16, 30, 31). The documents associated with the second attempt at serving defendant Henrich include a letter from Five Points Correctional Facility, returning the materials because "Ms. [Janice] Henrich has been out on extended sick leave." (Dkt. No. 31).

This is not a situation where plaintiff failed to properly identify the defendant, nor does it appear to be a situation in which the defendant has left DOCS employ. Thus, this court would not have dismissed this complaint against this defendant for failure to serve. Certainly it is not plaintiff's fault that this defendant could not be served, and the court understands the security concerns with affording a personal

11

address for the defendant.  The court would have attempted to assist the plaintiff in determining another way to serve this defendant.  Thus, this court will not recommend dismissal against defendant Henrich for failure to serve.

However, plaintiff's claims against this defendant involve only due process issues.  Plaintiff has made the same claims against other defendants who have appeared and who have moved for dismissal on the merits.  Since this court is recommending dismissal of plaintiff's due process claims on the substance of the amended complaint, it is unnecessary at this time to order that service be re-attempted on this defendant.

With respect to defendant Kante, however, the documents indicate that there was no Sergeant C. Kante at Mohawk Correctional Facility. (Dkt. No. 16).  The plaintiff may have misidentified this defendant.  According to the amended complaint, defendant Kante was an individual who investigated one of plaintiff's grievances.  If this court were not recommending dismissal on the substance of plaintiff's due process claims, the court would have allowed plaintiff some discovery in an attempt to properly identify the defendant.  Thus, this court will not recommend dismissal for failure to serve, but will recommend dismissal as against this defendant for alternate reasons.

## 4.   Due Process

In order to begin a due process analysis, the court must determine, *inter alia*, that plaintiff had a protected liberty interest in remaining free from the confinement that he challenges. *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  In *Sandin*,

the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

Although plaintiff lists only three "causes of action", the court has reviewed plaintiff's entire amended complaint and his listing of "counts" in order to determine what claims plaintiff may be attempting to raise in this complaint. Most of plaintiff's amended complaint alleges that he was unsatisfied with the way his grievances were handled by defendants. He has only one claim that he when he was transferred to Five Points, he was keeplocked for 24 hours per day without any hearing or factual determination.

## A. Grievances

Plaintiff claims that defendant Pearlman denied his grievances improperly and issued decisions that apparently did not identify the individual who investigated the grievance. Plaintiff complains that defendant Kelefant wrote a synopsis of plaintiff's grievance and included it with the original. Plaintiff calls this a "fake" grievance, although he does not explain why this would have denied him a constitutional right when the original grievance was apparently attached to the synopsis. Then plaintiff claims that defendants Riddick (a senior corrections officer) and Allen (a sergeant) signed the "incorrect" and "fake" grievance.

Plaintiff then complains that he brought this issue to defendant Pearlman's attention, but that defendant Mance (the Deputy Superintendent for Programs) answered on behalf of Pearlman, stating that it was defendant Kelefant's job to write the synopsis. Plaintiff then sues defendant Mance for due process violations.

Plaintiff complains that defendant Kante improperly investigated one of plaintiff's grievances and issued a false report. Plaintiff makes the same types of claims against individuals at Five Points. He claims that defendants Brown and Peter brought papers for plaintiff to sign, but would not let plaintiff read those papers. Plaintiff Henrich was named because she allegedly failed to respond to plaintiff's grievances.

In order to succeed on a section 1983 claim, plaintiff must show that he has been deprived of a constitutional or other federal right. 42 U.S.C. § 1983. Generally, violations of state laws or procedures do not rise to the level of constitutional violations. *See Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir. 1996); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987). In New York, the grievance resolution procedure was established by state law. *See* N.Y. CORRECT. LAW § 139. *See also Patterson v. Smith*, 53 N.Y.2d 98, 101, 440 N.Y.S.2d 600, 602, 423 N.E.2d 23 (1981). New York has also promulgated regulations governing the procedures for resolving inmate grievances. N.Y. COMP. CODES R. & REGS. tit. 7, §§ 701.1-701.16.

Courts have consistently held that because grievances procedures are undertaken voluntarily by the New York and other states, they are ***not constitutionally required***. *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, *6-7

(S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). *See also Bullock v. Horn,* CV-99-1402, 2000 U.S. Dist. LEXIS 21573, *22-23 (M.D. Pa. 2000)(plaintiff claimed improper refusal to process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 U.S. Dist. LEXIS 552, *8-9 (S.D.N.Y. Jan. 25, 1988).  Because the grievance procedures are not constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983. *Id.*

Thus, while the filing of grievances is protected, the manner in which a grievance is investigated is ***not constitutionally protected***. *Odom v. Poirier*, 99 Civ. 4933, 2004 U.S. Dist. LEXIS 25059, *37-38 (S.D.N.Y. Dec. 10, 2004)(citing *inter alia Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)).  The extent of investigation into the grievance is in the discretion of the officers who conduct it. *Torres*, 246 F. Supp. 2d at 342.  Therefore, the fact that any of the defendants allegedly mishandled plaintiff's grievances does not rise to the level of a constitutional violation, regardless of the degree of mishandling.  Thus, any claims involving the mishandling of grievances may be dismissed.

### B. Keeplock

Plaintiff does allege that after he was transferred to Five Points, he filed a grievance, addressed to the Inmate Grievance Resolution Committee (IGRC), and asking why he had been placed in keeplock without a hearing or any other determination. AC p.12, ¶ 34.  The amended complaint makes it clear that plaintiff has some medical impairments, and that he has been confined to a medical unit, however,

it is unclear what plaintiff means by "keeplock."  Generally, keeplock refers to confinement in one's own cell based on some sort of disciplinary infraction.  From the amended complaint, it is also unclear how long plaintiff was kept in this "keeplock" confinement and what type of confinement it was.  Plaintiff does state in the amended complaint that he was told that "outside yard" would start on December 1, 2003, which would indicate that as of that date, plaintiff would no longer be in "keeplock." AC p.13, ¶ 41.

This court cannot engage in a *Sandin* analysis to determine whether plaintiff's confinement was atypical and significant because plaintiff has not made any statements of fact that would even indicate how long plaintiff was confined, let alone what the conditions of his confinement were.   The amended complaint could be read to allege that Dr. Peter was responsible for the classification. *Id.* ¶ 37.  It is unclear because plaintiff states that "defendant [Peter] keeplocked plaintiff according to Senior Corrections Councilor [sic] T. Badgen ... ." *Id.*  This sentence could mean that plaintiff alleges that Senior Corrections Counselor Badgen told plaintiff that Dr. Peter ordered plaintiff keeplocked or that Counselor Badgen ordered plaintiff keeplocked. Counselor Badgen is ***not*** named as a defendant.

Plaintiff does state that he asked defendant Dr. Peter why he had been classified as a "patient prisoner", making it again appear that his confinement was somehow medically related.  However, plaintiff later states that he believes that it was someone at Mohawk Correctional Facility who was responsible for placing plaintiff in this "category."  Finally, plaintiff claims that he wrote to defendant Brown regarding, *inter*

*alia*, the grievance that asked about his classification. AC p.12, ¶ 36.  Plaintiff states

that defendants Henrich and Brown did not respond to this request for information. *Id.*

p.13, ¶ 45.

Based on the degree of confusion in the complaint, plaintiff has not sufficiently

stated a claim for a due process violation against any particular defendant.  However,

since this court is recommending dismissal on the pleadings, the dismissal would be

without prejudice to plaintiff amending this complaint to state a proper due process

claim.  The court also notes that since the court is recommending denial of judgment

on the pleadings with respect to defendant Peter as stated below, and defendant Peter

is one of the individuals who, according to plaintiff, could possibly have been

responsible for this keeplock, the facts may be developed at a later time after some

discovery.

## 5.   **Medical Care**

In order to state a claim based on constitutionally inadequate medical treatment,

the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A

plaintiff must allege that his access to physicians for necessary medical care was

unreasonably delayed or denied, or that prescribed medical treatment was not

administered. *Tamarin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing

*Tatar v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir.

1977).

The court would point out that disagreement with prescribed treatment does not

rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44 (S.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does not have the right to treatment of his choice. *Id*. (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S. at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

Once again, in an abundance of caution in favor of the pro se plaintiff, this court has reviewed the amended complaint to determine what claims plaintiff is attempting to raise. Plaintiff seems to allege that Dr. Peter ignored plaintiff's request to see an eye doctor. Although plaintiff does not clearly state an Eighth Amendment claim, he does use the words "deliberate indifference" for every claim he makes. He also alleges that defendant Peter did not answer his request for a wheelchair in order to use the shower. AC p.13, ¶ 42, 43. Finally, plaintiff outlines his medical impairments and states that Dr. Peter "keeplocked" him, treated plaintiff through a small window in the door, allowed plaintiff to stay in a room where the water did not run properly, and denied him a water pitcher and ice. *Id.* ¶ 46.

Based on these allegation, even though they are weak, this court will not recommend granting a motion for judgment on the pleadings as to an Eighth

18

Amendment claim against Dr. Peter.

**6.**     **Verbal Abuse**

Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats or verbal harassment without injury, "although indefensible and unprofessional," do not rise to the level of constitutional violations).

Plaintiff alleges that defendants Durante and Meacham verbally harassed and abused plaintiff because of his use of an "over bed" table.  Plaintiff alleges that on one occasion, defendant Durante pushed plaintiff onto the floor and spilled water on his papers.  None of the alleged verbal abuse, even if plaintiff refers to it as harassment or "torture" is actionable under section 1983.

Additionally, in order for the alleged physical action of pushing plaintiff onto the floor to rise to the level of a constitutional violation, the act would have had to constitute the "'unnecessary and wanton infliction of pain.'" *Baker v. Willet*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albert*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)).  In order to meet the constitutional standard for excessive force, the defendants'

conduct must be "'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.'"*Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. Macmillan*, 503 U.S. 1, 9-10 (1992).  However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321.

In this case, plaintiff merely alleges that defendant Durante pushed plaintiff to the floor, and that plaintiff was afraid so he called for the nurse.  There is no indication that plaintiff suffered any injury or that the push was "repugnant to the conscience of mankind."  Thus, any claims of physical abuse, based on the facts stated in plaintiff's amended complaint may be dismissed.

## 7.    Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other*

*grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[4]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted). In this case, plaintiff states that the defendants actions were in retaliation for a lawsuit that plaintiff filed in the Northern District of New York (*Goros v. Central Office Review Committee, et al.*, 03-CV-407). Plaintiff states that he was at Mohawk for five months without incident, but began to be the subject of harassment after he filed his lawsuit.

While it is true that filing a lawsuit is a protected activity, plaintiff can show absolutely no nexus between the filing of his lawsuit and any actions by any of the defendants. The court would first point out that the previous lawsuit was filed April 2, 2003 and although plaintiff was already housed at Mohawk, the lawsuit was against the CORC in Albany and against two physicians at **Wende** Correctional Facility. There is no indication of how the defendants at Mohawk would have even been aware of the lawsuit. There is also no indication of how the individuals at Five Points would

---

[4] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).

have been aware of plaintiff's lawsuit.  Thus, plaintiff's retaliation claim may be dismissed on the pleadings.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for judgment on the pleadings (Dkt. No. 41) be **DENIED** as to any Eighth Amendment claims against **DEFENDANT PETER**, and it is further

**RECOMMENDED,** that defendants' motion for judgment on the pleadings be **GRANTED IN ALL OTHER RESPECTS, and the complaint dismissed WITHOUT PREJUDICE** as to **ALL DEFENDANTS**.  Any further complaints filed by plaintiff must use the ***names of the defendants*** in the text of the complaint, rather than referring the reader to a "legend."

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 21, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

22